UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BARBARA ANN HOBBS,              )
                               )
            Plaintiff,          )
                               )
v.                             )          No. 3:17-CV-00095-DCP
                               )
NANCY A. BERRYHILL,             )
Acting Commissioner of Social Security,  )
                               )
            Defendant.          )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 21 & 22] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24]. Barbara Ann Hobbs ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.      PROCEDURAL HISTORY

On February 27, 2014, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, claiming a period of disability beginning on January 1, 2015. [Tr. 304–09]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 206]. An initial hearing was held on May 17, 2016, and the record was held open to allow for the submission

of additional evidence. [Tr. 82–115]. A supplemental hearing was then conducted on September 6, 2016. [Tr. 40–81]. On November 9, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 21–33]. The Appeals Council denied Plaintiff's request for review on January 12, 2017 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on March 14, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since February 27, 2014, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments:  chronic obstructive pulmonary disease (COPD), atrial fibrillation, degenerative disc disease, depressive disorder, rule out psychotic features, anxiety disorders, and substance abuse, in remission (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she should avoid hazards and exposure to pulmonary irritants such as dust, fumes, gases, etc.  She is able to perform simple and detailed work and could concentrate up to two hours at a time.  She could deal with people and change for one third of an eight-hour day.
>
> 5. The claimant is unable to perform any past relevant work.  (20 CFR 416.965).

6. The claimant was born on January 3, 1968, and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.963).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, since February 27, 2014, the date the application was filed (20 CFR 416.920(g)).

[Tr. 23–33].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It

is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V.   ANALYSIS

On appeal, Plaintiff claims that the ALJ's RFC determination is not supported by substantial evidence. First, Plaintiff asserts that the ALJ failed to properly weigh the opinions of

5

examining consultants, Dr. Ellen Denny and Dr. Eva Misra. [Doc. 22 at 13–16]. Next, Plaintiff claims that the ALJ failed to fully and fairly develop the record, as the ALJ failed to order further testing regarding Plaintiff's potentially low range of intellectual ability. [*Id.* at 17–18]. The Court will address each allegation of error in turn.

### A. Weight Given to Opinions of Dr. Denny and Dr. Misra

Plaintiff argues that the ALJ failed to assign proper weight to the opinions of examining consultants, Dr. Ellen Denny and Dr. Eva Misra, when determining Plaintiff's RFC. [Doc. 22 at 13–16].

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. § 416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). In fact, opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

### 1. Opinion of Ellen Denny, Ph.D.

Plaintiff presented for a consultative psychological examination with Dr. Denny on May

25, 2014. [Tr. 1773–77]. Plaintiff reported that she was not currently taking any medications, as she could not afford them, and that she had been admitted to the psychiatric hospital "many times." [Tr. 1773]. Plaintiff stated that she used various drugs until 2009, but had not used any drugs since then, that both of her sisters suffer from bipolar disorder, and that she was sexually abused by an uncle and mentally abused by her mother. [Tr. 1774]. Next, Plaintiff reported that she has always had problems getting along with others both at school and at work. [*Id.*]. She then stated that she currently lives with a friend, that she takes medication on her own but her friend has to set them out for her, and that she is able to do a few household chores, such as occasionally sweeping, carrying laundry, or making the bed, but that she is limited by her COPD. [*Id.*]. Plaintiff explained that she does not go out or visit with friends, she stays home and watches TV, and she has a hard time completing any task; if she does complete a task, she is usually pleased with her work. [*Id.*].

On mental status examination, Dr. Denny opined that Plaintiff displayed a significantly depressed mood, no unusual thoughts or evidence of psychotic thought process, did not appear to be oriented in all four spheres of consciousness, and demonstrated mild impairment in memory, moderate impairment in attention and concentration, mild-to-moderate impairment in comprehension and judgment, and severe impairment in abstract thinking. [Tr. 1775–76].

Dr. Denny concluded that Plaintiff likely fell in an extremely low range of intellectual ability and recommended further testing in order to clarify a diagnosis. [Tr. 1776]. Plaintiff was assessed with persistent depressive disorder, with anxious distress, late onset, as well as persistent major depressive episode, severe. [Tr. 1777]. Plaintiff was further diagnosed with panic disorder and borderline personality disorder. [*Id.*]. As to work-related abilities caused by Plaintiff's cognitive and psychological limitations, Dr. Denny opined that Plaintiff displayed moderate impairment in understanding and remembering, moderate impairment in sustaining concentration

and attention, severe impairment in interacting with others, and severe impairment in adapting to changes and requirements. [*Id.*].

In the disability decision, the ALJ assigned little weight to Dr. Denny's opinion, as the ALJ noted that Dr. Denny's findings were based on the claimant's self-report and the overall evidence showed less restrictive limitations. [Tr. 29]. Here, Plaintiff claims that the ALJ failed to sufficiently explain her reasoning for providing little weight to Dr. Denny's opinion, and that Dr. Denny's report is supported by her examination. [Doc. 22 at 14–15].

First, the ALJ was not required to specifically acknowledge any of the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c), including Plaintiff's arguments that Dr. Denny's opinion was the only examining psychological opinion of record or her specialization as a psychologist contracted by the Social Security Administration to perform consultative exams. [Doc. 22 at 14–15]. Nothing within 20 C.F.R. §§ 404.1527(c) and 416.927(c) mandates that every factor be explicitly addressed. *See McClain-Nelson v. Comm'r of Soc. Sec.*, No. 12-14490, 2014 WL 988910, at *7 (E.D. Mich. Mar. 13, 2014) ("[A]n ALJ is not required to discuss every factor listed in 20 C.F.R. § 404.1527[(c)]."); *see also Buchert v. Comm'r of Soc. Sec.*, No. 3:13-CV-01418, 2014 WL 1304993, at *7 (N.D. Ohio Mar. 27, 2014) (holding same). The ALJ need only "consider" the regulatory balancing factors in determining the appropriate weight a medical opinion deserves. 20 C.F.R. § 416.927(c).

In the present case, Dr. Denny noted that she performed a clinical interview, as well as a mental status exam of Plaintiff, and that "[t]here was no significant evidence of inconsistencies, distortions, vagueness, holes in history…observed by this examiner or suggested by the claimant's self report." [Tr. 1773]. However, the ALJ reasonably found that Dr. Denny's opinion was primarily based on Plaintiff's self-report, and properly considered the extent to which Dr. Denny's

opinion was supported by the objective medical evidence, as opposed to Plaintiff's subjective allegations. *See Shirley v. Comm'r of Soc. Sec.*, No. 1:15-cv-726, 2016 WL 6534261, at *10 (S.D. Ohio Nov. 3, 2016) ("In light of the ALJ's finding that plaintiff was not fully credible, which is supported by substantial evidence…the ALJ was justified in discounting Dr. Johnson's opinion on the ground she relied largely on plaintiff's self-reported symptoms."), *report and recommendation adopted by*, 2017 WL 1190538 (S.D. Ohio Mar. 31, 2017); *cf. Klusmeier v. Berryhill*, No. 3:16-cv-39, 2017 WL 1066641, at *13 (E.D. Tenn. Mar. 21, 2017) (reviewing an ALJ's treatment of Dr. Denny's opinion in another case, finding that a notation that she reviewed a prior psychological evaluation, as well as letters from Plaintiff's nurse practitioner and social worker, "demonstrate that Dr. Denny did not rely solely on the Plaintiff's self-report in assessing the Plaintiff's ability to perform work-related activities as found by the ALJ").

The Sixth Circuit recently upheld an ALJ's assignment of less weight to a consultative examiner's opinion, as the ALJ found that the opinion was based on the claimant's subjective reporting of symptoms, and the opinion was not supported by other objective evidence. *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017). In *Staymate*, the Sixth Circuit reiterated that "[w]e have previously found reasoning that a medical opinion relied too heavily on the claimant's subjective complaints as adequate to support an ALJ's decision to give little weight to the opinion." *Id.* (citing *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013)); *see also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629 (6th Cir. 2016) ("Regardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and repackage it as an opinion.").

Here, the ALJ also found that the objective medical evidence did not support Dr. Denny's opinion, as the ALJ stated that "the overall evidence shows less restrictive limitations." [Tr. 29].

First, the ALJ noted that "[o]n medical examinations, [Plaintiff] was consistently described as cooperative, alert and oriented, with appropriate mood and affect and no functional deficits." [*Id.*]; *see, e.g.*, [Tr. 930, 1780, 1858, 1861, 1949, 1953, 2042, 2316]. Additionally, the ALJ detailed that although Plaintiff described fairly limited daily activities, these descriptions cannot be objectively verified, and "it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition, in view of the objective medical evidence." [Tr. 30].

The ALJ further addressed Plaintiff's subjective allegations relating to her physical condition at length. First, although Plaintiff testified that she suffered a stroke in June 2014 [Tr. 89], the ALJ detailed that "there was no evidence of transient ischemic attack (TIA) or cerebral vascular accident (CVA) and it was attributed to medication effect versus conversion disorder." [Tr. 24]. Next, the ALJ discussed Plaintiff's COPD, first stating that in April 2015, Plaintiff presented with complaints of chest pain, while Plaintiff had only moderate shortness of breath. [Tr. 28]. Subsequently, medical records from August 14–15, 2015, detail that Plaintiff's COPD was stable without exacerbation. [*Id.*]; *see* [Tr. 2220]. However, the ALJ noted that Plaintiff's COPD was further exacerbated by a longstanding history of tobacco abuse. [Tr. 28].

Next, with regard to Plaintiff's degenerative disc disease, the ALJ detailed Plaintiff's consultative examination with Dr. Misra on June 3, 2014, where Plaintiff displayed normal gait, range of motion, muscle condition and strength, with the exception of a limitation on lumbar spine flexion. [*Id.*]; *see* [Tr. 1779–81]. Additionally, the ALJ noted that although Plaintiff presented to Physicians Regional Medical Center on March 12, 2015, with complaints of back pain, Plaintiff "showed no spinal tenderness, full range of motion and normal motor strength and sensation." [Tr. 28]; *see* [Tr. 1952–53]. During a subsequent examination on August 11, 2015, Plaintiff's musculoskeletal examinations were grossly normal, with no appreciated pain on palpitation. [Tr.

28]; *see* [Tr. 1906–07].

Additionally, the ALJ held that Plaintiff's substance abuse, continued smoking, and failure to comply with recommended medical treatment and medication were inconsistent with her allegations of severe restrictions in her daily activities. [Tr. 29]. While Plaintiff testified that she stopped using drugs in 2012, the ALJ noted that that drug withdrawal was suspected on August 14, 2015, when Plaintiff presented to Parkwest Medical Center. [*Id.*]; *see* [Tr. 2065]. The ALJ stated that "[t]here is evidence that the claimant has not been entirely compliant in taking prescribed medications or following up with treatment, which is not consistent with the limitations alleged in connection with [her] application." [Tr. 29]. Further, despite testifying that she had stopped smoking in March of 2016 [Tr. 46], the ALJ noted that records show that Plaintiff was still smoking in May of 2016 and had a longstanding history of tobacco abuse. [Tr. 28–29]; *see* [Tr. 2206]. The ALJ discussed how Dr. Samer Hodroge, who examined Plaintiff at Physician's Regional Medical Center on January 30, 2016, stated that Plaintiff was clearly noncompliant, and continued to smoke after discharge. [Tr. 29]; *see* [Tr. 2290].

An ALJ may evaluate a claimant's allegations of disabling symptoms in light of the treatment he or she has received. *See* 20 C.F.R. § 416.929(c)(3)-(4); *Holland v. Comm'r of Soc. Sec.,* 528 F. Supp. 2d 728, 731 (W.D. Mich. 2007) ("The ALJ could logically view [Plaintiff's] noncompliance with part of the prescribed treatment regimen…as evidence that her functional limitation and pain, while real, were not quite as severe as she alleged.") (citing *Strong v. Soc. Sec. Admin.,* 88 F. App'x 841, 846 (6th Cir. 2004)). Plaintiff was instructed on several occasions that her decision to continue smoking would only worsen her impairments and symptoms, and Plaintiff's subsequent refusal to stop smoking is a legitimate factor to consider in evaluating Plaintiff's subjective allegations. *See, e.g.,* 20 C.F.R. § 416.929(c)(3); *see also Sias v. Sec'y of*

11

*Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (holding claimant's failure to stop smoking was inconsistent with his allegations of disabling pain and limitation). Therefore, the ALJ properly considered Plaintiff's continued smoking and noncompliance with her medical treatment when evaluating her claims of severe medical impairments.

Although Plaintiff claims that the ALJ's "conclusory rejection of Dr. Denny's opined limitations which are supported by her evaluation of Plaintiff is not supported by substantial evidence" [Doc. 22 at 16], substantial evidence supports the ALJ's decision to assign little weight to Dr. Denny's opinion, as the ALJ reviewed the medical record regarding Plaintiff's physical and mental impairments. *See Long v. Berryhill*, No. 1:16-cv-485-CHS, 2018 WL 1162621, at *7 (E.D. Tenn. Mar. 5, 2018) (rejecting Plaintiff's argument that the ALJ, after stating that the consultative examiner's opinion was based primarily on Plaintiff's subjective complaints, should have identified the evidence which was inconsistent with the consultative examiner's testimony, as "the ALJ described the relevant evidence that undermined Dr. Chandler's opinion throughout his opinion").

Ultimately, the ALJ's reasons for discounting Dr. Denny's opinion are consistent with the regulatory factors for weighing medical opinions and controlling Sixth Circuit authority. *See* 20 C.F.R. § 416.927(c)(2)–(4); *see also Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (finding that substantial evidence supported the ALJ's decision not to give controlling weight to a physician's opinion because the opinion conflicted with the physician's findings, was contradicted by other evidence in the record, and appeared to be based primarily on the claimant's subjective complaints). The ALJ found that Dr. Denny's opinion was based on Plaintiff's self-report, and subsequently detailed how the medical record did not support Plaintiff's subjective mental and physical allegations. *See, e.g.*, *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462,

467 (6th Cir. 2017) (finding "reasoning that a medical opinion relied too heavily on the claimant's subjective complaints [is] adequate to support an ALJ's decision to give little weight to the opinion"); *Makulski v. Berryhill*, No. 3:17-cv-128, 2018 WL 2144152, at *5 (E.D. Tenn. May 9, 2018) (holding substantial evidence supported ALJ's assignment of partial weight to consultative examiner's opinion, as "the ALJ considered the consistency and supportability of the opinion," when concluding that the consultative examiner heavily relied on the Plaintiff's subjective allegations).

Therefore, as Dr. Denny's findings were not supported by or consistent with other substantial evidence in the record, Plaintiff's allegation that the ALJ relied on her own analysis of the evidence in rejecting Dr. Denny's opinion is without merit. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."). Accordingly, Plaintiff's assignment of error with regard to the weight given to Dr. Denny's medical opinion is not well-taken.

### 2. Opinion of Eva Misra, M.D.

Plaintiff also claims that the ALJ failed to assign proper weight to the opinion of Dr. Misra, a consultant who examined Plaintiff on June 3, 2014 [Doc. 22 at 16]. Plaintiff alleges that Dr. Misra's conclusions are consistent with her examination. [*Id.*]. However, the Commissioner asserts that that the ALJ properly evaluated Dr. Misra's opinion, as the ALJ explained that the limitations found in Dr. Misra's opinion were inconsistent with her own examination findings and the overall medical record. [Doc. 24 at 10–11]. As the Court previously stated, in considering the opinions of non-treating physicians, such as Dr. Misra's, while an ALJ is not required to defer to her opinion, nevertheless, "in weighing a consultative examiner's opinion, an Administrative Law

Judge must evaluate the factors listed in 20 C.F.R. § [416.927(c)]." *Williams v. Colvin*, No. 4:15-CV-00082-HBB, 2016 WL 797594, at *4 (W.D. Ky. Feb. 26, 2016).

Here, Plaintiff was consultatively examined by Dr. Misra on June 3, 2014. [Tr. 1779–82]. Dr. Misra detailed the results of a lumbosacral x-ray, stating that Plaintiff had mild discogenic disease, with mild-to-moderate lower lumbar facet arthropathy, nothing acute. [Tr. 1779]. Dr. Misra stated that in response to pulmonary function testing, Plaintiff's lung age was 118 years with moderate obstruction, as well as low vital capacity possibly from a concomitant restrictive defect. [*Id.*]. After a physical examination, Dr. Misra assessed that Plaintiff was well developed and alert, that her intellectual functioning and speech were normal, and that Plaintiff was cooperative but not reliable on her medical history. [Tr. 1780]. Additionally, Dr. Misra detailed that Plaintiff's gait and station were normal, that she could get up from a chair and on and off the table without difficulty, that her grip strength was 5/5, right and left, and that her mobility was normal. [*Id.*].

On examination, Dr. Misra diagnosed Plaintiff with moderate chronic obstructive pulmonary disease due to heavy smoking, minimal improvement postbronchodilator, as well as mild to moderate arthritis in her back. [Tr. 1781]. Further, Dr. Misra detailed Plaintiff's absence of atrial fibrillation on the day of the examination, as well as stated that Plaintiff had no clear evidence of a stroke and a normal neurological exam. [*Id.*]. Ultimately, Dr. Misra opined that Plaintiff retained the capacity to occasionally lift and carry, including upward pulling of up to ten pounds for up to one-third of an eight-hour workday, that Plaintiff could frequently lift or carry up to ten pounds from one-third to two-third of an eight-hour workday, that Plaintiff could stand or walk with normal breaks for a total of about six hours in an eight-hour workday, and that Plaintiff could sit without restrictions. [*Id.*].

In the disability decision, the ALJ discussed Dr. Misra's opinion, and stated that while Dr. Misra concluded that Plaintiff was limited to "sedentary exertion lifting no more than ten pounds …this is not consistent with the examination and is given little weight." [Tr. 28]. Further, the ALJ assessed that "Dr. Misra's opinion that the claimant could stand or walk six hours of an eight-hour day and sit without restrictions, is given little weight, as it is without substantial support from the evidence of record." [*Id.*]. The ALJ detailed how Dr. Misra's opinion was inconsistent with the examination, as Plaintiff exhibited normal gait, range of motion, muscle condition and strength, with the exception of a limitation on lumbar spine flexion. [*Id.*]. In addition, the ALJ noted that Dr. Misra detailed that Plaintiff's mobility was normal and bilateral grip strength was 5/5. [*Id.*]. Dr. Misra's opinion further states that Plaintiff exhibited a "full range of motion universally except for lumbar spine flexion is 75 degrees." [Tr. 1781]. Accordingly, as the ALJ found Dr. Misra's "inconsistent with the results of [her] examination…, [n]o more particular rational for the weight given [to] the opinions of non-treating sources is required." *Anderson v. Soc. Sec. Admin.*, No. 3:15-0579, 2016 WL 4430697, at *4 (M.D. Tenn. Aug. 22, 2016) (citing *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012)), *report and recommendation adopted by*, 2016 WL 4619168 (M.D. Tenn. Sept. 6, 2016).

However, the ALJ addressed several inconsistencies between Dr. Misra's opinion and the objective medical record. *See, e.g.*, *Hinkle v. Berryhill*, No. 2:17-CV-54, 2018 WL 2437238, at *5 (E.D. Tenn. May 30, 2018) (holding the ALJ properly assigned little weight to a consultative examiner's opinion, as the ALJ detailed how the opinion was not consistent with the examination or medical record, as well as reviewed Plaintiff's subjective allegations). With regard to Plaintiff's claims of back pain and degenerative disc disease, the ALJ noted that a March 12, 2015 exam revealed that Plaintiff "showed no spinal tenderness, full range of motion and normal motor

strength and sensation."  [Tr. 28]; *see* [Tr. 1952–53].  The ALJ noted that a subsequent examination

on August 11, 2015, demonstrated that Plaintiff's "musculoskeletal examinations were grossly

normal, with no appreciated pain on palpitation."  [Tr. 28]; *see* [Tr. 1906–07].  The ALJ also

addressed that although "the evidence shows paroxysmal atrial fibrillation," Plaintiff's ejection

fraction improved to where on June 29, 2016, "clinical findings included 70 percent ejection

fraction, normal left and right atrium with no evidence of stenosis."  [Tr. 28]; *see* [Tr. 2348].

The ALJ also properly analyzed Plaintiff's subjective allegations in assessing her RFC.

*See Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (finding that substantial

evidence supported the ALJ's decision not to give controlling weight to a physician's opinion

because the opinion conflicted with the physician's findings, was contradicted by other evidence

in the record, and appeared to be based primarily on the claimant's subjective complaints).  The

Court has previously detailed the ALJ's assessment that Plaintiff's COPD was further exacerbated

by her continued smoking [Tr. 28], as well as the ALJ's description that Plaintiff had not been

compliant in taking prescribed medications or following up with her treatment, "which is not

consistent with the limitations alleged in connection with [her] application."  [Tr. 29].

Additionally, the ALJ noted that although Plaintiff reported that she stopped working due to her

medical conditions, a third-party report in Plaintiff's work history report indicated that Plaintiff

did not return to work because she began to care for her parents who were ill.  [Tr. 30]; *see* [Tr.

382].

Lastly, the ALJ gave great weight to the opinions of the nonexamining state agency physicians, Thomas Thrush, M.D., and Peter Arrowsmith, M.D., who opined at the initial and reconsideration levels, respectively, that Plaintiff could perform light exertion work with postural and environmental limitations. [Tr. 30, 147–49, 183–85]. The ALJ explained that the opinions of Dr. Thrush and Dr. Arrowsmith "clearly reflect a thorough review of the record and are supportable." [Tr. 30]. The Court notes that the opinions of these nonexamining state agency physicians provided substantial evidence that the ALJ could rely upon in discounting Dr. Misra's opinion. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (when the ALJ is "presented with the not uncommon situation of conflicting medical evidence[,] [t]he trier of fact has the duty to resolve that conflict"). Nonexamining state agency consultants are "highly qualified physicians…who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). "In appropriate circumstances, opinions [from nonexamining sources] may be entitled to greater weight than the opinions of treating or examining sources." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). Here, the state agency physicians reviewed a significant portion of the record, including Dr. Misra's opinion, in reaching their RFC findings. Substantial evidence supports the ALJ's conclusion that their opinions are consistent with the record.

Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion that Dr. Misra's opinion was entitled to little weight, as the ALJ detailed how the opinion was inconsistent with the examination, as well as the objective medical record as a whole. *See Puckett v. Colvin*, No. 3:13-CV-01486, 2014 WL 1584166 at * 9 (N.D. Ohio April 21, 2014) (stating that, although the ALJ was not required to evaluate the opinions of consultative examiners with the same standard of deference to the opinion of a treating source, he was required to "acknowledge

that [the examiners'] opinions contradicted his RFC finding and explain why he did not include their limitations in his determination of Plaintiff's RFC").

## B.     Whether the Record was Developed Fully Regarding Intellectual Ability

Plaintiff asserts that the ALJ failed to fully and fairly develop the record when the ALJ did not order further testing regarding "Plaintiff's potentially low range of intellectual ability." [Doc. 22 at 17]. Plaintiff claims that the ALJ should have ordered further intellectual testing due to Dr. Denny's diagnosis that Plaintiff "appears to be functioning in an extremely low range of intellectual ability," and that "a WAIS IV and WRAT 4 is recommended in order to clarify diagnosis." [Tr. 1776]. Similarly, Dr. Denny noted the need to "[r]ule out Extremely Low Range of Intellectual Ability." [Tr. 1777]. The Commissioner contends that the entire record contained sufficient information for the ALJ to make an informed decision regarding Plaintiff's capacity to engage in substantial gainful activity, including disability, function and work background reports, extensive medical records, and two oral hearings in which testimony was presented on Plaintiff's impairments. [Doc. 24 at 18].

The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 416.917. Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). The ALJ had no "special, heightened duty to develop the record" in this case because Plaintiff was represented by counsel. *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002). Further, it is not error to fail to obtain additional evidence where the record contains a "considerable amount of evidence" pertaining to the claimant's limitations. *Culp v. Comm'r of*

*Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013). However, the ALJ has the ultimate responsibility to ensure that a claimant receives a full and fair hearing, *Richardson v. Perales*, 402 U.S. 389, 411 (1971), which includes a duty to fully and fairly develop the record. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986).

Plaintiff claims that the ALJ's finding that that she could perform detailed work is not supported by substantial evidence, as Dr. Denny opined that Plaintiff was likely functioning in the extremely low range of intellectual ability, and the ALJ failed to order additional testing. [Doc. 22 at 17–18]. During the administrative hearing, Plaintiff testified that she received a GED [Tr. 44] and told Dr. Denny during the consultative exam that she left school during the tenth grade and was in special education classes during grade school [Tr. 1774]. In assessing Plaintiff's mental status, Dr. Denny noted that Plaintiff displayed mild impairment in memory, moderate impairment in attention and concentration, mild to moderate impairment in comprehension and judgment, as well as severe impairment in abstract thinking. [Tr. 1776]. Ultimately, when determining Plaintiff's RFC, the ALJ held that she could perform light work, was able to perform both simple and detailed work, could concentrate up to two hours at a time, and that she could deal with people and change for one third of an eight-hour day. [Tr. 26].

"An ALJ has a duty to develop the record where the evidence suggests that a mental impairment exists." *Brooks v. Astrue*, No. 3:09-CV-432, 2011 WL 652839, at *8 (E.D. Tenn. Jan. 26, 2011), *report and recommendation adopted by*, 2011 WL 652837 (E.D. Tenn. Feb. 14, 2011). An ALJ's failure to exercise their discretion to obtain additional evidence when the record is inadequate is a ground for remand or reversal. *Ward v. Comm'r of Soc. Sec.*, 198 F. Supp. 3d 825, 830 (S.D. Ohio 2016). However, in the present case, the ALJ properly considered the medical record and evidence as a whole in considering Plaintiff's RFC, and thus was not required to further

19

develop the record.

First, as the Court has previously discussed, the ALJ properly held that Dr. Denny's opinion was entitled to little weight, finding that her opinion was primarily based on Plaintiff's subjective allegations and "the overall evidence shows less restrictive limitations." [Tr. 29]. Therefore, although Dr. Denny opined that further intellectual testing was required, the ALJ discredited the basis for this opinion. *See Brooks*, 2011 WL 652839, at *10 (holding "substantial evidence supports the ALJ's decision to not order IQ testing," despite the recommendation from the consultative examiner, as "Dr. Booher was the only physician of record who indicated that Plaintiff was potentially functioning in the mild mental retardation range, and she made this judgment based primarily on the Plaintiff's subjective complaints, which the ALJ discounted").

The ALJ also considered the entire medical record in assessing Plaintiff's RFC. As the Court has previously discussed, in discrediting Dr. Denny's opinion, the ALJ noted that "[o]n medical examinations, [Plaintiff] was consistently described as cooperative, alert and oriented, with appropriate mood and affect and no functional deficits." [*Id.*]; *see, e.g.*, [Tr. 930, 1780, 1858, 1861, 1949, 1953, 2042, 2316]. In *Robertson v. Commissioner of Social Security*, the Sixth Circuit held the ALJ was not obligated to order an additional examination where the record contained a "considerable amount of medical evidence" relevant to the claimant's limitation and "resulting functional capacity," including "test results, physicians' notes, and opinion evidence from multiple physicians, and the lack of any significant inconsistencies in the evidence." 513 F. App'x 439, 441 (6th Cir. 2013); *see, e.g.*, *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013) (addressing a mental RFC assessment).

The ALJ first addressed Plaintiff's intellectual functioning when analyzing the "paragraph B" criteria to determine whether Plaintiff met a listing for her neurocognitive disorders, depressive

bipolar and related disorders, or alcohol dependence at step three. [Tr. 25]. When considering Plaintiff's mental limitations, the ALJ found that Plaintiff has moderate restriction in activities of daily living, as Plaintiff reported that she needs help choosing clothes but is able to perform personal care independently, and that she is able to prepare simple meals but does not do household chores. [*Id.*]. The ALJ then found that Plaintiff has moderate difficulties in social functioning, as Plaintiff reported that she has problems getting along with others, but that she spends time with her significant other, "records note [that she] interacted well with other residents in Helen [Ross] McNabb . . . and she was consistently described as cooperative on medical examinations." [*Id.*].

When addressing Plaintiff's concentration, persistence, or pace, the ALJ found that Plaintiff has moderate difficulties, as Plaintiff reported that she could not pay bills or count change and that she could not pay attention for a long period of time or follow instructions, but that when examined by Dr. Denny, "she displayed mild memory impairment and moderate limits with attention and concentration." [*Id.*]. Additionally, the ALJ cited to medical records from Helen Ross McNabb, where Plaintiff received mental health treatment between August 2015 and April 2016, which state that Plaintiff "was logical and focused with memory intact and attention and concentration within normal limits" when reporting the effectiveness of her medications. [*Id.*]; *see* [Tr. 2088]. Lastly, the ALJ noted that Plaintiff has not experienced any episodes of decompensation or psychiatric hospitalization of an extended duration. [Tr. 26]. The Commissioner also correctly cites to medical records from John Peter Smith Hospital in Texas, where Plaintiff was seen from September 24, 2012 to October 22, 2012, before she moved to Tennessee, stating that Plaintiff's intellectual faculties were normal and that she had no deficits. [Doc. 24 at 19]; *see* [Tr. 570, 1693].

The ALJ's ultimate RFC determination reflects that she did not find that Plaintiff had a severe impairment stemming from her intellectual deficits. *See Anderson v. Colvin*, No. 1:16-cv-139-SKL, 2017 WL 3221664, at *5–7 (E.D. Tenn. July 27, 2017) (holding the ALJ did not fail to develop the record by declining to order additional intelligence testing as the ALJ discussed Plaintiff's "paragraph B" criteria and found that "Plaintiff was not entirely credible"); *Cuttitta v. Colvin*, No. 2:12-cv-02184-APG-GWF, 2014 WL 3104019, at *12 (D. Nev. July 7, 2014) (holding the ALJ did not err by disregarding consultative examiner's recommendation to obtain further intellectual testing as the consultative examiner "found reason to question the validity of Plaintiff's cognitive responses," and "[i]t was proper for the ALJ to consider other evidence in the record," including Plaintiff's daily activities).

Next, Plaintiff does not argue that she raised the application of Listing 12.05[1] at the administrative level. A review of other Social Security disability cases within the Sixth Circuit reveals that an ALJ may be found to have failed to develop the record regarding a Plaintiff's intellectual functioning when an IQ test is required to determine whether the Plaintiff met or equaled Listing 12.05. *See Ward v. Comm'r of Soc. Sec.*, 198 F. Supp. 3d 825 (S.D. Ohio Aug. 1, 2016) (holding the ALJ failed to develop the record by ordering additional intelligence testing and substantial evidence did not support the ALJ's determination that Plaintiff did not meet or equal the elements of Listing § 12.05(C) regarding intellectual disability); *Johnston v. Comm'r of Soc. Sec.*, No. 1:10–cv–444, 2012 WL 1030462, at *6 (S.D. Ohio Mar. 27, 2012); *but see Anderson*,

---

[1] Lists and requirements for disabilities pertaining to various body systems are set forth in 20 C.F.R. Pt. 404 App.1. Section 12.00 defines Mental Disorders. The Social Security Administration modified its regulations effective September 3, 2013, to change the terminology in Listing 12.05 from "mental retardation" to "intellectual disability." *See* 78 Fed. Reg. 46,499 (Aug. 1, 2013). The change does not affect how a claim is evaluated under Listing 12.05. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 536 n.1 (6th Cir. 2014).

2017 WL 3221664, at *5–7 (holding the ALJ did not fail to develop the record by declining to order additional intelligence testing to determine whether Plaintiff qualified for Listing 12.05(C), as the ALJ "found that Plaintiff faced no 'adaptive functioning deficits' as the resulted of the estimated impairment in intellectual functioning").

Accordingly, Plaintiff's argument that the ALJ's decision should be remanded for further development of the record concerning her intellectual functioning is without merit, as the ALJ considered the medical record and evidence as a whole in considering Plaintiff's RFC, and properly discounted Dr. Denny's opinion calling for further intellectual testing. *See Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013) (per curiam) ("Given that the record contained a considerable amount of evidence pertaining to Culp's mental limitations and that Dr. Douglass had completed a mental RFC assessment . . ., the ALJ did not abuse her discretion by declining to obtain an additional assessment."); *Johnson v. Berryhill*, No. 1:16-cv-479, 2018 WL 1586097, at *8 (E.D. Tenn. Mar. 31, 2018) (holding the ALJ did not err in failing to further develop the record as "the record contained numerous medical records and physical examination reports during the relevant period" and [t]he ALJ found the evidence sufficient to make a disability determination").

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 21**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge